UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIEL FELICIANO,

    Plaintiff,

v.                                            Case No. 8:12-CV-1676-T-27JSS

CLINTON CABBAGE, et al.,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** are Defendants' Motion for Summary Judgment (Dkt. 33) and affidavits (Dkts. 34-36) in support of the Motion. Plaintiff has not responded and the time in which to do so has passed.[1] Therefore, the Motion is deemed unopposed. Upon consideration, the Motion (Dkt. 33) is **GRANTED**.

## I. INTRODUCTION

Plaintiff asserts claims for compensatory and punitive damages against Defendants Clinton Cabbage and Matthew Myers, detectives with the Pasco County Sheriff's Office, Pasco County, Florida, in their individual capacity under 42 U.S.C. §1983, based on alleged violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Specifically, Plaintiff alleges that Defendants violated his rights under the Fourth Amendment, and denied him due process of law in violation of the Fifth and Fourteenth Amendments, by making false statements in an arrest affidavit and subjecting him to a malicious prosecution. Defendants argue that they are entitled to

---

[1] Plaintiff was advised of the requirements of Federal Rule of Civil Procedure 56 and given until August 20, 2015, to file a response (Dkts. 25, 31, 37).

summary judgment because 1) Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), since a judgment in Plaintiff's favor would necessarily imply that his state convictions are invalid, and 2) they are entitled to qualified immunity.

## II. FACTUAL BACKGROUND

In August of 2011, Myers was investigating the homicide of Kamar Allen in Pasco County (Dkt. 35, p. 1, ¶¶ 3, 4). Myers interviewed Allen's girlfriend, Jessica Keith, who indicated that she believed Plaintiff shot Allen (Id., p. 2, ¶¶ 6, 8). Keith advised Myers that she and Allen had recently been at Plaintiff's residence at 6509 Sandra Drive when Allen got in a dispute with Plaintiff and Keith Mann, during which Mann and Plaintiff threatened to kill Allen (Id., p. 2, ¶9). Mann admitted that he was at Plaintiff's house on August 19, 2011, when Allen and Keith arrived at the house (Id., p. 2, ¶10). Keith further stated that after she and Allen left the residence, she heard Allen say that he wanted to "shoot up" the residence (Dkt. 36-5, p.3). Keith saw Allen leave her residence on August 20, 2011, with two guns (Id.).

On August 24, 2011, Myers spoke with Christopher Rush, a resident of 6514 Sandra Drive, which is located across the street from 6509 Sandra Drive (Id.). Rush indicated that he had been living there for approximately two years, and that Plaintiff had been living at 6509 Sandra Drive for approximately the past four to five months (Id.). Rush also stated that he heard gunshots on August 20, 2011 (Id). Two other individuals who lived in the neighborhood also told Myers that they heard gunshots on the same day (Id.). Myers saw what appeared to be two bullet holes on the residence (a trailer), one in a window and one underneath the window in the aluminum siding (Id.).

On August 24, 2011, Detective William Lindsey told Myers that while Lindsey was interviewing Plaintiff, Plaintiff admitted that 1) his girlfriend, Halida Alimanovic, lived at 6509

Sandra Drive, 2) he frequently visited and spent the night there, and 3) he spent the entire night there on August 19, 2011, and was there in the morning on Saturday August 20, 2011 (Id., p. 4). Myers also spoke to Detective Sergio Soto who informed Myers that 1) there were photographs on Plaintiff's cellular phone showing Plaintiff holding handguns, 2) Plaintiff admitted that at least one of the photographs was taken inside the residence at 6509 Sandra Drive, 3) Plaintiff admitted being a "Blood Gang member," and 4) Alimanovic admitted that she currently rented the trailer at 6509 Sandra Drive, and that Plaintiff was her boyfriend (Id.).

Detectives Soto and Lisa Schoneman interviewed Erika Silva, who was Mann's former roommate (Dkt. 36-4, docket p. 54). Silva indicated that she knew Plaintiff killed Allen (Id.). Silva also indicated that evidence used in Allen's homicide was at Plaintiff's residence, including gloves, zip-ties, guns, a taser, and counterfeit money (Id., docket p. 53).

When the detectives went to 6509 Sandra Drive on August 24, 2011, they saw both Plaintiff and Alimanovic in the neighborhood (Dkt. 35, p. 2, ¶¶12, 13). Both Plaintiff and Alimanovic denied the detectives' requests to search the trailer at 6509 Sandra Drive (Id., p. 2, ¶13).

On August 25, 2011, Myers completed an Affidavit for Search Warrant for 6509 Sandra Drive (Id., p. 2, ¶14; Dkt. 36-5). A state circuit court judge issued the Search Warrant the same day (Dkt. 36-9). The search warrant was executed on the same day, while neither Plaintiff nor Alimanovic were present (Dkt. 36-10; Dkt. 36-11, docket p. 3). During the search, the detectives discovered, among other things, a handgun, a burnt glove, zip ties, gang related photographs and paperwork, and a safe which contained items including a handgun, ammunition, drug paraphernalia, gang related materials, and counterfeit money (Dkt. 36-10).

Following the search, and based on information provided to him by Myers, Cabbage

prepared a Complaint seeking a warrant for Plaintiff's arrest for violations of Florida Statutes §§ 790.23(1), felon in possession of a firearm, 790.23(1) felon in possession of ammunition, and 790.221, possession of a machine gun (Dkt. 34, p. 2, ¶8; Dkt. 36-12).[2] In the Complaint, Cabbage stated that the residence at 6509 Sandra Drive was in the care, custody, or control of Plaintiff and of Alimanovic (Dkt. 36-12, p. 2). He also indicated that Myers had informed him that both men's and women's clothing and a safe were discovered in the master bedroom closet of the residence. (Id., p. 2). The Complaint also stated that Myers informed Cabbage that a "machine pistol," ammunition, and a "Blood Bible" were found in the safe (Id.). The Complaint further indicated that Plaintiff was known to be a member of the Valentine Blood gang, and that a "Blood Bible" is a common piece of gang paraphernalia (Id., pp. 3-4).

In the Complaint, Cabbage incorrectly indicated that "Detective Myers informs that [Plaintiff] and Halida Alimanovic were the only two individuals present when the search warrant was executed." (Id., p.2). Cabbage indicates that he "mistakenly wrote" that Plaintiff and Alimanovic were present during execution of the search warrant, and that he correctly indicated in his Offense Incident Report that Plaintiff and Alimanovic were not present during the search (Dkt. 34, p. 2, ¶9; Dkt. 36-11, p. 3).

A warrant was issued for Plaintiff's arrest on August 30, 2011 (Dkt. 36-13). Cabbage arrested Plaintiff on September 1, 2011 (Dkt. 36-14). On March 28, 2014, Plaintiff pleaded "no contest" to and was adjudicated guilty of felonious possession of firearm, felonious possession of ammunition, and possession of a machine gun (Dkt. 33-1; Dkt. 13).

---

[2]The handgun discovered in the safe had been modified into a machine gun (Dkt. 34, p. 2, ¶6). Additionally, Plaintiff was a convicted felon in that he had been convicted and adjudicated guilty of aggravated battery and possession of cocaine on November 13, 2009 (Dkt. 36-12, p. 1).

# III. APPLICABLE STANDARD OF REVIEW

Summary judgment is proper if, following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. The evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable jury could find for the nonmoving party. *Id.*

Qualified immunity is a question of law for the courts, even when asserted on summary

judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). As the Eleventh Circuit has stated:

> The objective nature of qualified immunity defines what fact issues are material for summary judgment purposes. To avoid summary judgment it is not enough for a plaintiff to produce evidence, which — if believed (for summary judgment its truth is assumed) — would allow a fact-finder to find just that the government-agent defendant was, in reality, wrong about the facts on which the defendant acted. Instead, to defeat summary judgment because of a dispute of material fact, a plaintiff facing qualified immunity must produce evidence that would allow a fact-finder to find that no reasonable person in defendant's position could have thought the facts were such that they justified defendant's acts.

*Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993) (citing *Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1234-35 (11th Cir. 1992)).

## IV. DISCUSSION

### A. Fourth Amendment Malicious Prosecution Claim

Defendants argue that Plaintiff's Fourth Amendment malicious prosecution claim is barred by *Heck*. The Court agrees.

In *Heck*, "the Supreme Court held that 'when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence.' If so, dismissal of the suit is warranted 'unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" *Harrigan v. Metro Dade Police Dep't Station #4*, 2015 U.S. App. LEXIS 22485, at *13-14 (11th Cir. Dec. 23, 2015) (unpublished) (quoting *Heck*, 512 U.S. at 487). In *Heck*, the Supreme Court stated "[o]ne element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." 512 U.S. at 484. *See also Uboh v. Reno*, 141 F.3d 1000, 1004 (11th Cir. 1998) ("[I]n order to state a cause of action for malicious prosecution, a plaintiff must allege and prove that the criminal proceeding that gives rise to the action has

6

terminated in favor of the accused.").

Plaintiff has failed to allege or prove that the prosecution arising from his September 1, 2011 arrest ended in his favor.[3] Rather, Plaintiff concedes (see Dkt. 16, p. 7, ¶ 6), and Defendants' evidence establishes (see Dkt. 33-1), that Plaintiff pleaded no contest to, and was adjudicated guilty of, the charges. Because the criminal charges have not terminated in Plaintiff's favor, Plaintiff's malicious prosecution claim must be dismissed as a matter of law pursuant to *Heck*.

## B. Fourth Amendment False Statements Claim

### 1. *Heck*

Defendants argue that Plaintiff's Fourth Amendment false statements claim is barred by *Heck*. The Court disagrees.

*Heck* does not generally bar false arrest claims because "an illegal search or arrest may be followed by a valid conviction." *Hughes v. Lott*, 350 F.3d 1157, 1160-61 (11th Cir. 2003). However, *Heck* does bar those claims that "if successful, would necessarily imply the invalidity of the conviction because they would negate an element of the offense." *Hughes*, 350 F.3d. at 1160 n.2.

Here, Plaintiff contends that Defendants falsely stated that 1) "the residence [in which the gun and ammunition were found] was in the care, custody, and control of Daniel Feliciano and Halida Alimanovic," and 2) "Daniel Feliciano and Halida Alimanovic were the only two individuals present when the search warrant was executed." (Dkt. 16, p. 6). Defendants have not argued or

---

[3] "To recover for malicious prosecution, a plaintiff must prove '(1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures.' *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). The common-law elements include '(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused.' *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003)." *Black v. Wigington*, 2016 U.S. App. LEXIS 1057, at *11 (11th Cir. Jan. 22, 2016) (unpublished).

7

demonstrated that if Plaintiff was successful in his claim that these statements were false, "it would cast doubt on the validity of an essential element of the offense for which he was found guilty." *Weaver v. Geiger*, 294 Fed. Appx. 529, 533 (11th Cir. 2008) (unpublished opinion) (citation omitted). Additionally, the court is unable to determine from the record whether the claim necessarily implies the invalidity of Plaintiff's convictions. Accordingly, the court cannot say at this time that *Heck* bars Plaintiff's false statements claim.

### 2. Qualified Immunity

Although *Heck* does not bar Plaintiff's false statements claim, Defendants persuasively argue that they are entitled to summary judgment on account of qualified immunity. "Under the doctrine of qualified immunity, government officials acting within their discretionary authority are immune from suit unless the official's conduct violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Wilkerson v. Seymour*, 736 F.3d 974, 977 (11th Cir. 2013) (quoting *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010)). For a plaintiff to avoid summary judgment on qualified immunity, the facts, taken in the light most favorable to the plaintiff, must demonstrate (1) a constitutional violation and (2) that the violation was clearly established. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (abrogated in part by *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Plaintiff does not dispute, and it is apparent from the record, that Defendants were acting within the scope of their discretionary authority as law enforcement officers. Accordingly, the burden shifts to Plaintiff to show that qualified immunity is inapplicable. *Corey Airport Servs., Inc. v. Decosta*, 587 F.3d 1280, 1285 (11th Cir. 2009). Plaintiff has not met his burden because he has not shown that Defendants violated his constitutional rights.

8

Plaintiff contends that Defendants violated his Fourth Amendment rights because they deliberately made false statements in the arrest affidavit used to secure a warrant for Plaintiff's arrest. "[T]he Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest. . .if such false statements were necessary to the probable cause." *Jones v. Cannon*, 174 F.3d 1271, 1285 (11th Cir. 1999).

There is no evidence that Defendants' statement that "the residence was in the care, custody, and control of Daniel Feliciano and Halida Alimanovic" was false. And, even assuming that statement was false, Plaintiff has not presented any evidence that Defendants knew or reasonably should have known that the statement was false.

According to Myers' Affidavit for Search Warrant,[4] while he was investigating the Allen murder, Rush told him on August 24, 2011 (the day before the search warrant was executed), "that he has lived at 6514 Sandra Drive for approximately two years" and "that Daniel Feliciano currently lives at 6509 Sandra Drive and has lived there for the past four to five months." (Dkt. 36-5 at p. 3). Keith told Myers that she and Allen were at the residence at 6509 Sandra Drive on August 19, 2011, when "Allen engaged in a verbal dispute with Daniel Feliciano and Keith Mann. . . ." (Id. at p. 2). Detective Lindsey told Myers that Plaintiff admitted to Lindsey that 1) "Halida Alimnovic [sic] lives in the trailer located at 6509 Sandra Drive," 2) he "frequently visit[ed] and frequently spen[t] the night [at] the trailer located at 6509 Sandra Drive," and 3) he "spen[t] the entire night of Friday August 19, 2011 into the morning of Saturday August 20, 2011 at the trailer located at 6509 Sandra Drive." (Id. at p. 4). Finally, Detective Soto told Myers that Alimanovic admitted that she currently

---

[4]The Second Amended Complaint does not challenge the Affidavit for Search Warrant.

rented the trailer at 6509 Sandra Drive, and that Plaintiff was her boyfriend (Id.).

In light of this information, no reasonable jury could find that Defendants' statement that "the residence was in the care, custody, and control of Daniel Feliciano and Halida Alimanovic" was deliberately false. Accordingly, Plaintiff has failed to demonstrate a constitutional violation with respect to this claim.

Plaintiff likewise has failed to demonstrate a constitutional violation with regard to the statement that he and Alimanovic were present when the search warrant was executed. Cabbage admits that the statement was false (Dkt. 34, p. 2, ¶9). Nevertheless, he attests that he mistakenly made the statement, and that his Offense Incident Report correctly indicated that "Daniel and Halida were not present at the time the search warrant was executed." (Id.); (see also Dkt. 36-11, p. 3).

Although "the Constitution prohibits an officer from making perjurious or recklessly false statements in support of a warrant... the [prohibition] does not apply to *negligent* misrepresentations or omissions." *Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994) (emphasis in original). Plaintiff has presented no evidence that Cabbage deliberately or recklessly made the statement. Additionally, even assuming that Plaintiff has shown Cabbage deliberately made the false statement, the statement was not material to probable cause.

"A search warrant may be voided if the affidavit supporting the warrant contains deliberate falsity or reckless disregard for the truth. . . .Nonetheless, the warrant is valid if, absent the misstatements or omissions, there remains sufficient content to support a finding of probable cause." *Dahl v. Holley*, 312 F.3d 1228, 1235 (11th Cir.2002) (citations omitted).

Viewing the evidence in the light most favorable to Plaintiff, the misstatement in the arrest warrant affidavit that Plaintiff and Alimanovic were present when the search warrant was executed

is immaterial because there are other sufficient facts to support a finding of probable cause. Alimanovic admitted she was renting the trailer at 6509 Sandra Drive, and that Plaintiff was her boyfriend. Plaintiff admitted that he frequently visited and spent the night at 6509 Sandra Drive. Rush, who lived across the street from 6509 Sandra Drive, stated that Plaintiff was living there. While searching the master bedroom in the trailer, the officers looked in a closet which had in it both men's and women's clothing and a safe. Inside the safe were a pistol, ammunition, and a "Blood Bible," an item commonly possessed by members of the Valentine Blood gang. Plaintiff was a known member of that gang. Finally, Plaintiff was a convicted felon.

These facts form the basis for probable cause separate from the misstatement.[5] Accordingly, Defendants are entitled to qualified immunity from Plaintiff's Fourth Amendment false statements claim. *See Holmes v. Kucynda*, 321 F.3d 1069, 1083-84 (11th Cir. 2003) (police officer was not entitled to qualified immunity where he submitted a warrant application that included deliberately false statements about the incidents leading to the plaintiff's arrest and there was no evidence of probable cause other than the facts falsified by him).

## C. Fifth and Fourteenth Amendment Due Process Claims

Plaintiff contends that Defendants violated his right to due process under the Fifth and Fourteenth Amendments by knowingly making the false statements in the affidavit in support of the arrest warrant. Defendants argue that this claim should be dismissed because it is redundant to his Fourth Amendment claims based on the same set of facts.

"'The Due Process Clause provides two different kinds of constitutional protections:

---

[5] Plaintiff was charged with and pleaded no contest to, among other things, felon in possession of a firearm (Dkt. 33-1). In Florida, to establish this offense the State must prove that the defendant was a convicted felon who was in possession of a firearm. *See McCallum v. State*, 537 So. 2d 122, 124 (Fla. 1st DCA 1988).

procedural due process and substantive due process.'" *J.R. v. Hansen*, 803 F.3d 1315, 1320 (11th Cir. 2015) (quoting *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "Procedural due process is, as its name suggests, 'a guarantee of fair procedure.'" *Id.* (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Substantive due process protects fundamental rights and liberty interests. *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

To the extent Plaintiff is attempting to allege a denial of substantive due process, the court agrees with Defendants that the claim should be dismissed because it is redundant to Plaintiff's Fourth Amendment claim. In *Albright v. Oliver*, 510 U.S. 266 (1994), the plaintiff instituted a civil rights action claiming a detective deprived him substantive due process under the Fourteenth Amendment by subjecting him to criminal prosecution without probable cause. *Id.*, 510 U.S. at 268-69. In holding that "it is the Fourth Amendment, and not the substantive due process, under which petitioner Albright's claim must be judged[,]" the Supreme Court explained:

> Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of governmental behavior that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims. We think this principle is likewise applicable here. The Framers considered the matter of pretrial deprivations of liberty, and drafted the Fourth Amendment to address it.

*Id.*, 510 U.S. at 273-74 (citation and internal quotation marks omitted).

Here, Plaintiff challenges his pretrial detainment and a warrant allegedly issued without probable cause, deprivations protected under the Fourth Amendment.[6] He has not alleged or shown

---

[6] The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

how his substantive due process rights are different from his Fourth Amendment rights in these circumstances. Therefore, his substantive due process violation claim is redundant to his Fourth Amendment claim. Accordingly, his substantive due process claim will be dismissed.

To the extent Plaintiff may be alleging a procedural due process claim, it likewise must be dismissed. "A § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process." *Hansen*, 803 F.3d at 1320 (citation omitted).

Plaintiff has not alleged how he was denied constitutionally adequate process. He has not shown that Defendants knowingly and deliberately made false statements that were material to the finding of probable cause. Additionally, the Complaint in support of the arrest warrant was reviewed by a state circuit court judge (see Dkts. 36-12, 36-13). Accordingly, Defendants are entitled to summary judgment on Plaintiff's procedural due process claim.

Accordingly, it is **ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 33) is **GRANTED**. The **Clerk** is directed to enter judgment in favor of Defendants and close this case.

**DONE and ORDERED** in Tampa, Florida, on February 10th, 2016.

JAMES D. WHITTEMORE
United States District Judge

Copy to: Plaintiff *pro se*
Counsel of Record